CROSBY STEAM GAGE & VALVE CO. v. ASHTON VALVE CO.

(Circuit Court of Appeals, First Circuit. May 4, 1899.)

No. 264.

1. PATENTS—INVENTION.

In a safety valve, the making of an extension consisting of two rods, upward, within and through the top of the valve case, and above the muffler, for the purpose of affording means for controlling from the outside the steam-regulating device, does not, under the circumstances of this case, involve patentable invention.

2. SAME—SAFETY VALVES.

The Lohbiller patent, No. 496,058, for improvements in safety valves, is void for want of invention.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by the Crosby Steam Gage & Valve Company against the Ashton Valve Company for alleged infringement of a patent for improvements in safety valves. The circuit court adjudged that the patent was valid, and had been infringed by defendant, and entered a decree for complainant. From this decree, the defendant has appealed.

Ralph W. Foster (Joshua H. Millett, on the brief), for appellant.

James E. Maynadier and William Maynadier, for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This is a suit against an alleged infringer by the holder of letters patent, issued April 25, 1893, to Anton Lohbiller, for improvements in safety valves. Only one claim is in issue (the third), as follows:

"The combination in a safety valve and muffler of a valve seat, valve, and a steam-regulating device encircling the valve seat, and extending upward within and through the top of the valve case, and above the muffler, whereby the regulating device may be operated without removing the muffler or any part of the valve case, all substantially as specified."

The case was heard in the circuit court, on the merits, on bill, answer, and proofs, and an interlocutory decree was entered for a master and an injunction, although the learned judge who sat in that court expressed doubt as to the validity of the patent. The only novelty covered by the claim in issue is the extension upward within and through the top of the valve case, and above the muffler, of means of controlling from the outside the regulating device. This extension, as shown in the drawings and specification, is by means of two straight rods passing vertically from the regulating ring, through the valve casing and the muffler, to points above the muffler and exterior to it. It is claimed that this was the first time in which such an extension appears in connection with a pop valve having a muffler. There is, perhaps, no doubt on the question of mere novelty; also, there is no doubt on the question of utility, as the device permits the regulating of the valve without removing the muffler, as stated in the claim.

The difficulty is on the question of invention. It is admitted that in the earlier art such extensions had been made through the casings of valves which had no mufflers. The thought involved in the mere idea of having some contrivance by which any interior work can be controlled through a rod extending exteriorly, thus avoiding the necessity of taking apart, is, of course, a primary one in all the arts; so that the suggestion of making such a connection in this case clearly involved no invention. This is illustrated by a patent taken out by the same patentee, dated November 17, 1891, for a safety valve without a muffler, in the specification of which, after describing a rod, called there a "pin," which serves the same purpose as the rods in the case at bar, and which pin did not extend through the upper part of the safety-valve case, he said:

"It is obvious that the pin might be extended upward, and have its wrench block secured at the top of the highest part of the casing if desired."

He added that great advantage would be derived therefrom when the valve is used on locomotive boilers. Moreover, there is nothing called to our attention, or which we have found, which shows that there was any difficulty in making the extension, or any ingenuity involved in doing it. We therefore necessarily conclude that no inventive idea is covered by the claim in issue; and, inasmuch as the decree of the court below, although an interlocutory one, followed a hearing of the merits on bill, answer, and proofs, and the whole record is before us, we are able to dispose finally of the case, in accordance with what is now the settled rule of practice. The decree of the court below is reversed, and the case is remanded to that court, with directions to dismiss the bill with costs; and the costs of appeal are awarded to the appellant.